That's BMG Monroe versus the village of Monroe. And so, Mr. Rose, is it Roseboro? Rossboro. Rossboro. I'm sorry. It's Mr. Rossboro. You have reserved two minutes. So that gives you eight minutes out of the gate. Just make sure everybody's ready. On the right page. All right. You may proceed. Good morning, Your Honors. May it please the Court. Robert Rossboro for the appellant. The district court here dismissed the case, the complaint, on ripeness grounds, holding that because my client didn't apply to the Zoning Board of Appeals for a variance that the Zoning Board of Appeals could not grant as a matter of law, the case was unripe. So here what happened is my client applied for building permits for an approved project. They didn't, I mean, they withdrew a variance to the planning board, right? Well, they made an application to the planning board, which is the only available thing. They withdrew it at the end only after all five members of the planning board said that they would not approve that amendment. I'm not sure that that's a fair characterization of the record. I mean, it seems like they were skeptical, but they didn't rule. You didn't ask them to rule. Well, if you look at Appendix 657, which is the particular page where the minutes of the record is, and I'll quote, it says, Chairman Parise and members Cox, Karlich, DeAngelis were all part of the board during 18 years of reviews and approval and did not want to change what was approved. And a little bit later down on that page, member Boucher stated he was not part of the board before, was listening to discussion, and also agreed not to change the conditions. That is a final determination. So what's the point then of withdrawing, if that's a final determination? Well, the point of withdrawing at that point is because the only thing left to do was to put it on the next planning board meeting so a formal resolution could be adopted saying we're going to deny your amendment. The board had already committed to that position. So my client went through every available avenue of administrative relief here. There was no variance to the ZBA. The ZBA's authority under state law is only derived from the village law, Section 7712B, and from the Village of Monroe Code, Section 200-75. Each of those provisions provide that a variance can only be granted from an applicable zoning regulation. The planning board's conditions is not a zoning regulation. Zoning regulations are what's adopted by the village board in their legislative duties as the head of the village. Section 272 of the Village of Monroe Code says anytime you're seeking to amend a planning board approval, you have to go back to the planning board for that approval. And that's what my client did here. They went through the process. Their planner discussed each of the issues, and these were the only issues that were left after significant discussions with the planning board and the building inspector on how these requirements would be interpreted. Many revisions were made to the buildings before these applications were ultimately denied, and my client filed the ZBA appeal. So they exhausted every avenue of available relief and got a final determination not only from the ZBA but also from the planning board, because the planning board at that point had dug in its heels and said, this is how we interpret the law. Well, I mean, I guess if we disagree on that, then you would agree that you didn't get a variance, right? The planning board can give a variance. Yes, the planning board can amend the conditions of the prior approval. And your view is that you can sort of say you can file a petition for a variance, and if it seems like the wind is blowing against you, then you can withdraw it and say, well, they made it clear they weren't going to do this. They said they were entertaining it. They were considering it. And that's what they did at that meeting in front of the planning board. There was a lengthy discussion between our planner and the planning board members, including the planner from the village, where each of these conditions were discussed. They talked about the roof slopes. They talked about the other architectural design guidelines, including why they believed vinyl siding was not permitted and was a specific condition of the approval. That discussion was had. And at the end, each of the five members of the planning board said, we will not approve these changes to- They didn't say we will not approve this, right? They basically indicated their inclination not to change. But it just seems to me like this isn't a shortcut. You're required to sort of go through the process to get a decision from the planning board. And why do we want to encourage people to do what happened here and just sort of take shortcuts? Well, we could tell it wasn't going to happen. And I respectfully submit this is no shortcut, because the project went through 15 years of review before this. The final approvals were granted with these conditions. When we made the applications to the building inspector for the building permits and the building inspector denied those permits based upon what we believe to be misinterpretation of the final conditions, we made the application to the ZBA that we were- Can I just ask you? Sure. It's a slightly- it's not a topic, but it's a little different. Does the Article 78- I mean, didn't that proceeding find that, in fact, the plan did not comply with the environmental requirements? That it wasn't just that- well, I guess I'll ask you that first. Do you feel like that the- what was requested, the permits submitted didn't comply with the environmental findings, the requirements of the- Our position is that they did comply with what was required of the plain language of those findings. And we litigated that. Do you think the Article 78 didn't rule on that? Well, the Article 78 is still pending. So we had a Supreme Court decision, the trial court, and that has been appealed to the Appellate Division Second Department, and that appeal is still pending right now. But weren't there also at the planning board meeting acknowledgment that what was being submitted didn't comply with, that there were deviations from the roofing requirements or the siding requirements, that they didn't comply with what had been in the- what was approved initially? What our planner said is that we disagree that this doesn't comply, but here's why we need to make those changes. And the planner wasn't taking a legal position as to whether they were complying. They were trying to convince the board that these are minor changes to what the board believed the requirements were. And so they wouldn't change any of the actual impacts that the project would have from a visual perspective. And that's what you discuss in front of a planning board. The planning board's concerned with how this is going to look, what the environmental impacts might be. So the planner was discussing, here we need our main roof lines, our 12 on 12 pitch, but we have this small portion down at the bottom that's a little less than that. This isn't going to change any of the visual impacts. And that was the discussion that was had at the planning board. Ultimately, what the planning board told my planner and our attorney, the land use council at that point, was we have the village's determination. The ZBA made its determination. It covers all the lots in the village and in the town because this is a single resolution, applies to the entire project. And the village's position was a committed one. They weren't going to change what they had approved finally in 2015. That's all of the administrative steps that my client could have gone through before challenging it in Article 78, the ZBA determination, which we did, is still pending. And challenging, in this case, the actions of the village to delay and obstruct the construction of this project. What is the status, as we said, of the construction of this project? Are houses off? What's going on? So right now, there were 44 units planned for the village. There are two left to be still constructed in the village. There's about 100 left in the town of Monroe because this project spans both the village and the town. And they adopted a joint resolution to all of these requirements apply to the entire project in both the village and the town. So construction is still ongoing. How many up and how many are left to be constructed? Right now, there are, I believe, about 80 up between the town and the village. And then there's about 100 left to be constructed. And remind me again of your view as to the scope of the ZBA's authority over these variances. So the ZBA has the power under New York law to vary use restrictions and area restrictions. Yeah, in the zoning regulations itself that were adopted by the village board of trustees. The ZBA does not have the power to vary the conditions that a separate board, the planning board here, applied. The only person that the village of Monroe code provides can amend those restrictions is the planning board itself. And are all these to be constructed units held up for this problem? So what my client did is they made some changes to comply with what the village believed. And then proceeded with the construction of, because this was very early on in the process that this dispute arose. Rather than sitting and just accumulating damages, they tried to mitigate their damages, made some changes. And move forward with construction according to what the village believes was the proper interpretation. They did so at a substantially increased cost, because these changes caused much, much more cost than they would have incurred otherwise. So that's what this federal action would be addressing. All right. Well, you've reserved two minutes for rebuttal. Thank you. We'll now hear from Mr. Dorfman. Good morning. May it please the court. I think we agree at this stage, with my friend on the other side, that the planning board had the authority and the discretion to change the conditions of the approval that the developer wanted to change. They could give a variance. Well, to change the conditions. The ZBA gives variances. The planning boards can alter the conditions. So it's a slightly different procedure. But essentially, to give them the relief that they wanted, the planning board had that authority. They went to the planning board, took the first step in that process. What this court has said is the first step, which is to make an application. That application might have resulted in the developer getting the relief that it wanted. Is that really the case, though? It seems fairly clear that the board did not think that these permit applications were in compliance with the CEQA findings, the environmental findings. And at the meeting in September 2019, there were a lot of comments from the board members to the effect of this isn't what you agreed to, BMG. It doesn't fit this. It doesn't fit that. We put these specifications in for a reason, and this is not in compliance with that, with what we agreed to, with what we needed. These specifications mattered to us. It seemed very clear that the board felt that BMG was not in compliance with all of these requirements. And so I'm just wondering, what is there to suggest that they were going to let BMG build and construct in a way that didn't meet these requirements? I certainly agree with you, Judge, that the board expressed maybe even a great deal of skepticism about the relief that the developer was seeking. But this meeting was really just the first step in the planning board process. It was a work session, which is an informal version or a less formal version of a planning board meeting. That's meant to have an open exchange of ideas. All we have from that meeting are a set of minutes. We don't have a transcript. We don't have a decision or a determination. And that wouldn't come until later. The developer, sure, the planning board expressed these views, different views from different members, largely with the same inclination, I will grant you. But that is just a starting off point. The developer here could have submitted more materials from the planners, could have made an argument in a public hearing about the impact that this would have on their project, about public good, et cetera, et cetera. Could have tried to sway the board members. But instead, they decided to just bow out and, like it says in the minutes, seek their relief from the court. It's certainly not the case, though, that a finding that further actions would be futile doesn't require sort of a formal, you know, it doesn't have to get to the point that the board is making a formal decision and what have you. We can look at the circumstances of what's going on to say, as a practical matter, this was not going to change. And so I guess that's just what I'm wondering, that because what was being expressed seemed to, at least from the board members who spoke, all expressed, and I would characterize it more strongly than skepticism, about permitting all of these changes when it seemed at least clear to the board members that, look, this isn't in compliance with what we agreed to, and these changes are suggesting we're not okay with them. This court has set a very high standard for futility. Futility is when the board lacks the discretion or the authority to make that decision. Futility is when the board has made clear that nothing you can do could change its determination, has dug in its heels. Cases from this circuit have held that open hostility towards a development is not enough to show futility. I think, and so I think what the appellant is asking the court to do here is to significantly lower that bar in this case. And I think the danger of that is that the court will now have to start parsing minutes from hearings, not just looking toward, not just looking to a resolution, a final determination, a vote, an official act, which is usually what we have as a final determination, but now to start parsing meeting minutes to see, well, three board members were really into it, but two board members weren't so into it, and start gauging how likely it would be that this relief would be granted. I don't think that that's what the futility requirement has been about, and I think that to rule in the favor of the appellant here would change that requirement going forward. I also would like to draw a comparison to a recent case. Let me be sure I'm clear. What specifically, what step specifically should have been taken? So the developer here would going forward have been entitled to a public hearing on its application with the planning board. So it could have gone to a public hearing, presented at the public hearing. It could have presented at more than one public hearing. It could have submitted additional materials in support of its position. But given the history of the project and where it was at that point, what would that have accomplished? What would the presentations have accomplished? Judge, I don't know that. None of us know that, because the developer didn't bother to do that. They didn't set out to persuade. They didn't set out to change anyone's mind. They didn't need the entire board to be convinced. They just needed several members of the board to be convinced. If the process had gone forward, maybe they would have been in front of the board for a couple more months. Two months later, the board added a sixth board member, and then some months later it added a seventh board member. Maybe they could have convinced those board members over to their position. But we don't know that, because they didn't ripen their claim by pressing their position with the board. And frankly, if all they wanted to do was get a final decision without submitting anything else, they could have said, we waive all of that. Just give us a final decision. And then we'd at least be here with a final determination where we could say one way or the other, instead of worrying about, well, would it have been futile? Would it not have been futile? In the Village Green case versus the town of Islip, the developers did exactly that. They had a project. They had conditions that they didn't think that they could comply with. So they went to the town, and they lobbied the town. They went to the town board. They went to meetings and public hearings, and they lobbied the town. And ultimately, they couldn't get the town over to their side, and the court ruled that they had a final decision. But at least they tried. All the developer would have had to do here was try, push through to get that final determination. But they said, nope, we withdraw. We're just going to go try to get our money damages in court. And here we are. If there are no other questions, thank you. Thank you, Mr. Dorfman. Mr. Rossborough, for two minutes of rebuttal. Thank you, Your Honor. So what makes this case different is that we had 15 years of review here to reach a final determination from the village planning board. The village planning board granted that final conditional approval in 2015. We're not talking about what the project is proposed, what the way that it should look. All of that is done. That has been approved. What we're talking about now are the specific conditions of that approval. Williamson County says you've got to go and seek one meaningful application for a variance, right? Correct. And so that's what you did. We did. We filed a formal application. And then you withdrew it. Well, so- So why do we want, I guess that's my question. Why do we want to encourage litigants to withdraw them when they determine it would be futile and then they're just asking us to take their word for it? Because I don't think we want to become the planning board court of appeals a first resort. Of course. That's why Williamson sets the bar pretty high. We want this generally to get resolved in the localities where these things are taking place. How tough would it have been to just make your application, get your final decision from the board, and then come here? So we did. So we made our building permit applications. We went through months of discussions with the building inspector, made revisions to those to try to comply with the building inspector's views. And then you withdrew it. No. When we ultimately narrowed the issues to the three architectural designs, we appealed to the ZBA. The ZBA has the power to review as an appellate board the determination of the building inspector. We went through that whole process. That resulted in the state litigation, the article 78 that's now still pending. We also then made this further application in addition to the appeal from the ZBA. We could have presumably just said the village is committed to a position because the ZBA says this is how the approval should- the approval conditions should be interpreted. That itself was a final determination that could be reviewed by this court. But we went and took another step and said, okay, we'll even go- the village in the state case said go back to the planning board, make an application there, and that's exactly what BMG did. They put together a formal application, which is no small feat, to change these conditions. They discussed at length these conditions that they wanted changed. And then when all five members of the board said we're not going to make these changes, they said, okay, that's a commitment to a final position from the village. Who said that's a commitment to a final position from the village? Your attorney at the board meeting said that. Well, correct, because the only thing left- So he gets to decide whether it's a final decision or not? No, of course. The courts determine whether they believe under Williamson County it's a final decision. But we took this additional step to ensure that we had an opportunity to discuss with the planning board that initially approved. Remember, these are four members that made those approvals in 2015. You need three members to approve a resolution changing those conditions. All four who were on the prior board that approved this in the first instance specifically said at that hearing that they would not change what they had approved four years earlier. All four. And even the new board member who didn't have the same experience with the project reviewed the village planner's documentation and review, which the planner said don't change these conditions and said, I agree. I do not believe these conditions are going to be changed. You can go to a public hearing. You can submit. We submitted a full application and discussed each of these issues with the board. And so what about Mr. Dorfman's response that you could have asked them for just for them to rule at that point on your application? The board wasn't the board wasn't going to do it at a workshop meeting. So all that is is further administrative delay and cost. That is what Williamson County contemplates. Right. Well, right. And we went through the 15 year review process. So enough was enough. And you guys could basically make that application and then decide we didn't like the way this meeting went. So we're going to just call a call. And the only reason I can say that here is because we have all five board members of that board saying there's no way we are going to change these conditions. You're characterizing minutes which are characterizing what was said. We don't have a transcript. So we're going to take your word for it. That's really what this boils down to. Well, that's our word for it. We were there and we know there was a lot of hostility in the room. I mean, it's kind of show that they were hostile. At the very least, then that can be explored in discovery. But what we have now is a dismissal before discovery even starts. We could have discovery to determine whether or not you did what Williamson County said about exhausting the administrative means in the locality. That would be a good use of time. If it's necessary. I don't think it's necessary here. I think this record is a formal opinion. We don't know how much longer the village would have delayed and said we want more information. We want that information. We want this information. When all five board members have specifically said they're not going to make the changes we requested. That was enough to satisfy the finality requirement and the futility exception. All right. OK. Well, thank you both. We will reserve decision and oral argument. It was a quick day. We have others on submission. And so we will reserve on those as well. And I'll ask the deputy to adjourn the court.